UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEVEN R. PICTON,<br><br>Plaintiff,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>Defendant. | CASE NO. C11-1704MJP<br><br>ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on the motion for summary judgment filed by Plaintiff Steven R. Picton. (Dkt. No. 15.) Having reviewed the motion, Defendant's opposition (Dkt. No. 18), Plaintiff's reply (Dkt. No. 19), and all related filings (Dkt. Nos. 16, 20), the Court GRANTS Plaintiff's motion.

**Background**

Plaintiff Steven R. Picton began working at the food distribution company Puratos Bakery Supply, Inc., in 2004. (Dkt. No. 4 at 2.) A sufferer of Crohn's disease, Plaintiff underwent emergency eye surgery in January 2007, and his vision deteriorated to the point where

he was legally blind by July 2009. (Dkt. No. 16 at 9-10.) His doctors recommended that Plaintiff stop working, but after learning that no benefits would be available for the first six months of disability under his company's policy, Plaintiff attempted to remain at work rather than applying for disability benefits. (Dkt. No. 15 at 1.)

Plaintiff's management position, along with his geographic distance from company headquarters, allowed him to hide his worsening condition for some time. As the General Manager for the Pacific Northwest region, Plaintiff was based far from the company's headquarters in Cherry Hill, New Jersey. (Dkt. No. 16 at 15.) Plaintiff was able to compensate for his disability by asking his subordinates to put aside their normal duties and drive him to and from meetings and appointments, and to read hard copy and email communications to him. (Id. at 38.)

These arrangements eventually proved insufficient. Plaintiff asserts that he planned to notify his supervisor of his decision to go on disability at a company meeting scheduled for June 16, 2010 in Los Angeles. (Dkt. No. 15 at 5.) However, on June 14, 2010, Plaintiff's supervisor arrived in Seattle without prior notice and advised Plaintiff that he was terminated, effective immediately, for poor performance. (Id. at 6.) Plaintiff then submitted an application for long-term disability benefits indicating a first date of disability of June 15, the day after he was terminated. (Id.)

Defendant denied Plaintiff's claim for disability benefits because it determined that "the last day you were in active employment was June 14, 2010 as such, you were not covered under the policy as of June 15, 2010, the date you are claiming your disability." (Dkt. No. 16 at 59.) On June 21, 2011, Plaintiff appealed the denial of benefits because, he argued, although he remained employed through June 14, 2010, "he was disabled under the terms of the policy well before that

date, primarily by the legal blindness caused by medications to control his long-standing Crohn's disease." (Id. at 24.) In his appeal, Plaintiff submitted statements from several treating ophthalmologists, who confirmed that he has been legally blind since before he was terminated and that his vision will not improve in the future. (Id. at 18-19.)

On Oct. 12, 2011, Defendant sent Plaintiff a letter affirming its previous denial because it had "determined that Mr. Picton was not covered under the policy as of June 15, 2012, the date he is claiming his disability began." (Dkt. No. 16 at 55.) Defendant also justified its decision on medical grounds. As part of its review of Plaintiff's appeal, Defendant arranged to have Plaintiff's medical records reviewed by a board certified ophthalmologist, Dr. Joseph S. Goetz. (Dkt. No. 18 at 9.) Specifically, Defendant asked Dr. Goetz to note if there was "documentation of a change in Plaintiff's medical condition/status at the time his employment was severed on June 14, 2010 that would support a change in his functional status." (Dkt. No. 16 at 10.) Dr. Goetz concluded that "[t]here was no significant change in Mr. Picton's ocular condition at the time his employment was terminated on June 14, 2010 that would support a change in his functional status." (Dkt. No. 16 at 55.)

While the parties agree on the basic facts of this case, they agree on little else. First, Plaintiff and Defendant disagree about the standard of review that the Court should apply in evaluating the administrator's decision. Plaintiff argues that the Court should conduct a de novo review because the long term disability plan does not unambiguously give the administrator discretion to interpret plan terms, and because the disability policy's discretionary clause is void under state law. (Dkt. No. 15 at 12-13.) Defendant argues that plan language clearly grants discretion to the administrator and that the discretionary clause is valid under state law in

1  Delaware, where the policy was issued. (Dkt. No. 18 at 13.) Therefore, Defendant argues, the
2  Court should review the administrator's decision only for an abuse of discretion.
3        Plaintiff also argues that the Court should review the administrator's decision with added
4  skepticism because the administrator has a structural conflict of interest and because the
5  administrator violated a number of ERISA procedural regulations, including failing to decide
6  Plaintiff's appeal within the required 90-day period. (Dkt. No. 15 at 13-16.) Defendant does not
7  address Plaintiff's structural conflict of interest argument, and argues that its decision on
8  Plaintiff's appeal was timely under 29 C.F.R. § 2560.503-1(i)(3). (Dkt. No. 18 at 14.)
9        Defendant argues that, although Plaintiff was legally blind while he was employed at
10 Puratos, "he was able to perform his substantial and material job duties . . . because his employer
11 provided various accommodations, including having his subordinates drive him to meetings, and
12 read emails to him." (Dkt. No. 18 at 19.)  Plaintiff objects to Defendant's characterization of
13 these actions as employer-provided "accommodations," and points to Defendant's shifting
14 justifications for its denial of benefits as evidence of a lack of a reasonable basis to deny
15 Plaintiff's claim. (Dkt. No. 20 at 2.)
16       Plaintiff asks the Court to direct an award of benefits beginning on a date six months
17 from his last day of employment, continuing through the present. (Dkt. No. 15 at 20-21.) Plaintiff
18 also seeks an award of attorney's fees, with the amount to be determined after submission of
19 appropriate documentation, pursuant to 29 U.S.C. § 1132(g)(1).
20                                        **Discussion**
21   A.  <u>Summary Judgment</u>
22       Summary judgment is appropriate if the movant shows that there is no genuine dispute as
23 to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.
24 56(a). The party seeking summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those ports of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citations omitted).  Once the moving party has met his burden, Rule 56 requires the nonmoving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Id. at 324.

In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002). Summary judgment should be granted for the movant, if appropriate, in the absence of any significant probative evidence tending to support the opposing party's theory of the case. Fed. R. Civ. P. 56(e).

B.  ERISA Standard of Review

A denial of ERISA benefits is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). To receive deferential review, the plan must unambiguously grant discretion to the administrator. Kearney v. Standard Ins. Co., 175 F.3d 1084, 1088-90 (9th Cir. 1999). There are "no magic words that conjure up discretion on the part of the plan administrator," but plans have generally been found to grant discretion where the plan's language grants the power to interpret plan terms and to make final benefits determinations. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006) (en banc).

The plan here does not unambiguously grant discretion to the administrator because, while it grants Defendant the power to determine eligibility, it does not grant Defendant the

1  power to interpret plan terms. The plan states that participants are entitled to long-term disability

2  benefits when "Prudential determines" that "you are unable to perform the material and

3  substantial duties of your regular occupation due to your sickness or injury; and you have a 20%

4  or more loss in your indexed monthly earnings due to that sickness or injury." (Dkt. No. 16 at

5  72.) The plan later states that benefits will terminate and Prudential will stop sending payments

6  when the claimant "fail[s] to submit proof of continuing disability satisfactory to Prudential."

7  (Id. at 79.)

8        Analyzing similar language, the Ninth Circuit held that ERISA plan language stating that

9  proof of a disability claim "must be satisfactory to" the insurer does not unambiguously vest

10  discretion in the plan administrator. Feibusch v. Integrated Device Tech., Inc., 463 F.3d 880, 883

11  (9th Cir. 2006); see also Kearney, 175 F.3d at 1089-90. In Feibusch, the Ninth Circuit held that

12  where an ERISA policy "does not unambiguously indicate that the plan administrator has

13  authority, power, or discretion to determine eligibility or to construe the terms of the Plan, the

14  standard of review will be de novo." Id. at 884 (citations omitted). While Defendant points to an

15  unpublished case, Helm v. Sun Life Assurance of Canada, Inc., 34 Fed. Appx. 328, 331 (9th Cir.

16  2002), that held the opposite, district courts in the Ninth Circuit have consistently followed the

17  logic of the published opinion in Feibusch. See, e.g., Green v. Sun Life Assurance, Inc., 383 F.

18  Supp.2d 1224, 1228 (C.D. Cal. 2005); Roth v. Prudential Ins. Co. of Am., 752 F. Supp.2d 1160,

19  1165-66 (D. Or. 2010).

20        The statements cited by Defendant as unambiguously conferring discretion are contained

21  not in the plan itself, but in a different document, the summary plan document, or SPD. (Dkt. No.

22  18 at 11-12.) Defendant points to the SPD's ERISA Statement, which gives Prudential "the sole

23  discretion to interpret the terms of the Group Contract, to make factual findings, and to

24

1 determine eligibility for benefits." (Dkt. No. 16 at 98.) These statements fail to confer discretion
2 for two reasons. First, the Ninth Circuit resolves conflicts between a master plan document and
3 an SPD in favor of the insured. In <u>Bergt v. Ret. Plan for Pilots Employed by Mark Air, Inc.</u>, the
4 Ninth Circuit explained that "[w]hen the plan master document is more favorable to the
5 employee than the SPD . . . it controls, despite contrary unambiguous provisions in the SPD."
6 293 F.3d 1139, 1145 (9th Cir. 2002). This is because "[a]ny burden of uncertainty created by
7 careless or inaccurate drafting of the summary must be placed on those who do the drafting, and
8 who are most able to bear that burden, and not on the individual employee, who is powerless to
9 affect the drafting of the summary or the policy and ill equipped to bear the financial hardship
10 that might result from a misleading or confusing document." <u>Id.</u> (citing <u>Hansen v. Continental</u>
11 <u>Ins. Co.</u>, 940 F.2d 971, 982 (5th Cir. 1991).

12       Second, the plain language of the SPD's ERISA Statement clarifies that it is a separate
13 document from the Group Insurance Certificate. The ERISA Statement is preceded by a full page
14 notice, in large text, stating: "This ERISA Statement is not part of the Group Insurance
15 Certificate." (Dkt. No. 16 at 97.) In <u>Grosz-Salomon v. Paul Revere Life Ins. Co.</u>, the Ninth
16 Circuit held that discretionary language appearing only in an SPD could not be enforced by the
17 insurer when the SPD is not fully integrated with the insurance contract. 237 F.3d 1154, 1161
18 (9th Cir. 2001). The burden is on the insurance company to show that the plan gives it
19 discretionary authority, and Defendant offers no evidence showing that the SPD is integrated into
20 the insurance contract. (Dkt. No. 18 at11.)

21       Because the plan here does not unambiguously grant discretion to the administrator,
22 Defendant's denial of ERISA benefits is to be reviewed under a de novo standard, not an abuse
23 of discretion standard. <u>Kearney</u>, 175 F.3d at 1088-90. Because the plan language requires that the
24

Court use the de novo standard, the Court need not reach the issue of whether state insurance laws bar the inclusion of discretionary clauses in ERISA plans. (Dkt. No. 18 at 13.)

### C. Reasons for Additional Scrutiny of Administrator's Decision

Even under a deferential standard, additional scrutiny of Defendant's denial of benefits would be warranted because Defendant operates under a structural conflict of interest. Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 114 (2008). In Metro. Life, the Supreme Court held that a conflict exists when a benefits plan is administered by a professional insurance company that also pays the claims. Id. Where the administrator has a conflict of interest, the Court is to judge the administrator's decision to deny benefits to evaluate whether it is reasonable. Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 675 (9th Cir. 2011). "The conflict of interest requires additional skepticism because the plan acts as judge in its own cause." Id. In its opposition brief, Defendant does not contest that a structural conflict of interest exists, and offers no reason why the Court should not exercise additional scrutiny. (Dkt. No. 18 at 13.)

Additional scrutiny is also appropriate because Defendant's decision on Plaintiff's appeal was untimely. The Department of Labor's ERISA regulations provide that a claimant must be notified of an adverse determination on review not later than 45 days after receipt of the claim. 29 C.F.R. § 2560.503-1(i)(3). The administrator may take an additional 45 days if the administrator determines that special circumstances, such as the need to hold a hearing, require an extension of time, and if the administrator sends the claimant a notice indicating the special circumstances requiring an extension of time. Id.

Here, Defendant simply failed to follow these procedures. First, Defendant erred by calculating the 45-day period from the date it deemed Plaintiff's appeal "completed," i.e., the date his last additional medical documentation arrived. (Dkt. No. 18 at 14.) But the regulations state that the period of time within which a plan must make a benefit determination on review

begins at the time an appeal is filed in accordance with the reasonable procedures of a plan, without regard to whether all the information necessary to make a benefit determination on review accompanies the filing. 29 C.F.R. § 2560.503-1(i)(4). Second, Defendant never made any showing of "special circumstances," and apparently never sent the required notice to Plaintiff after the initial 45-day period expired. (Dkt. No. 16 at 57.) Instead, on the eve of the 90-day deadline, Defendant sent Plaintiff a letter explaining that "Prudential is not able to complete the appeal review of the information in Mr. Picton's file" because it "will need to review the medical records in Mr. Picton's claim file and review his group policy." (Id.) Even if the Court had determined that it should employ an abuse of discretion standard to this case, no deference would be justified here because "[d]ecisions made outside the boundaries of conferred discretion are not exercises of discretion, the substance of the decisions notwithstanding." Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Protection Plan, 349 F.3d 1098, 1104 (9th Cir. 2003).

D. Reasonableness of Prudential's Decision

Summary judgment is appropriate here because the evidence shows that there is no genuine issue of material fact as to whether Plaintiff was disabled under the terms of the plan. Plaintiff brings suit under ERISA's civil-enforcement provision, which allows a claimant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.' 29 U.S.C. § 1132(a)(1)(B). "[W]hen the court reviews a plan administrators decision under the de novo standard of review, the burden of proof is placed on the claimant." Muniz v. Amec. Constr. Mgmt., 623 F.3d 1290, 1294 (9th Cir. 2010). Plaintiff here meets this burden by showing that he was legally blind and unable to perform his occupation while he was covered by the plan.

1.  <u>Plaintiff was Disabled Before he was Terminated</u>

There is no dispute that Plaintiff was legally blind while he was working for Puratos and covered by the policy. In this case, seven doctors examined Mr. Picton or reviewed his record, and they all agree that he was legally blind before the date he was terminated: June 14, 2010. (Dkt. No. 15 at 13.) Even Defendant's own medical reviewer, who never examined Plaintiff, concluded that "Mr. Picton was legally blind as early as 07/06/09, and possibly prior to that date." (Dkt. No. 16 at 10.)

There is also no genuine issue of material fact that Plaintiff's legal blindness rendered him "unable to perform the material and substantial duties of [his] regular occupation," Prudential's definition of disability. (Dkt. No. 15 at 9.) As the General Manager for the Pacific Northwest region, Plaintiff's job description required him to "[d]irect and generally supervise all the day-to-day activities of the region, including the sales, technical, distribution and all operational aspects of the organization." (Dkt. No. 16 at 48.) Among other tasks, Plaintiff was required to "[r]epresent the region in professional associations" and "[t]ake action to correct unsatisfactory conditions that may arise in any phase of the operation." (<u>Id.</u> at 49.)

Plaintiff presented substantial evidence to the administrator that his legal blindness rendered him unable to perform his occupation. Dr. James Brandt, Plaintiff's treating ophthalmologist explained that "[b]y late 2009 I was strongly urging Mr. Picton to stop driving and to consider stopping work, as I felt his fluctuating and gradually worsening vision would prevent him from functioning in a management or executive position since his ability to read, use a computer and travel was badly compromised." (Dkt. No. 16 at 17.) Another treating ophthalmologist, Dr. Russell Van Gelder, Chair of the Department of Ophthalmology at the University of Washington School of Medicine, opined that, "Given his ocular status, it would be difficult or impossible for Mr. Piton to perform many activities including driving, reading,

ambulating in unfamiliar environments, etc." (Id. at 18.) He continued, "I would imaging he would have extreme difficulty performing his management job functions with his visual function." (Id.)

Plaintiff also provides letters from his coworkers supporting a conclusion that he was disabled. The company's Seattle Office Manager, Andi Beebe, regularly drove Plaintiff to and from meetings "because his vision limitations made driving dangerous to him and other drivers on the road." (Dkt. No. 16 at 37.) Puratos' Regional Sales Manager, Tom Hinchcliffe, often spent hours after work reading emails to Plaintiff. (Id. at 38.) Viewed together with the medical evidence, these letters support a conclusion that Plaintiff was unable to perform material and substantial duties of his regular occupation.

In contrast to Plaintiff's evidence of disability, Defendant does not designate any specific facts showing there is a genuine issue for trial. See Celotex, 477 U.S. at 323. Defendant's medical reviewer, Dr. Goetz, offered no opinion on the crucial question of whether Mr. Picton was disabled. (Dkt. No. 16 at 7-11.) This appears to be because Defendant assigned Dr. Goetz a different question: whether "there is documentation of a change in Mr. Picton's medical condition/status at the time his employment was severed on June 14, 2010 that would support a change in his functional status." (Id.)  Dr. Goetz's answer to that question—that there had been no change in Mr. Picton's status at the time his employment was terminated—sheds no light on whether Plaintiff's legal blindness rendered him unable to perform his duties before that date.

2. Prudential did Not Provide Reasonable Accommodations

In its opposition to this motion, Defendant drops the argument that Plaintiff was not covered by the policy at the time he applied for benefits. Instead, Defendant changes course and asserts for the first time that Puratos provided Mr. Picton "reasonable accommodations" that allowed him to perform his material and substantial duties. (Dkt. No. 18 at 19-20.) The Ninth

Circuit has held that it is appropriate to consider accommodations actually offered to an employee to determine whether he is able to perform the substantial duties of his regular job. See Saffle v. Sierra Pacific Power Co. Bargaining Unit Long term Disability Income Plan, 85 F.3d 455, 459-60 (9th Cir. 1996). However, Defendant offers no evidence showing that Puratos made any "accommodations" for Plaintiff. Instead, the record shows that Plaintiff's subordinates took time away from their assigned duties to drive him to work, attend meetings to support him, and stay after work to read emails to him. (Dkt. No. 16 at 37-38.) Defendant does not assert that the company knew about, let alone authorized, these actions, and Defendant offers no evidence that Puratos would have knowingly agreed to this reallocation of resources. (Dkt. No. 18 at 17-22.)

Defendant also fails to offer any evidence that any "accommodations" rendered Plaintiff able to perform his duties. Defendant offers no evidence that the assistance provided by Plaintiff's subordinates was sufficient to overcome Plaintiff's worsening vision. (Dkt. No. 18 at 22-23.) In contrast, Defendant's decision to terminate Plaintiff for "poor performance," without further explanation, supports the opposite conclusion: any accommodations were insufficient. (Id.) Defendant also offers no evidence that additional office equipment rendered Plaintiff able to perform his duties. While the record shows that Mr. Picton's office manager, Adrea Beebe, acquired a larger computer monitor for Plaintiff and bought two new lamps for his workspace, Defendant does not assert that this equipment allowed Plaintiff to overcome his legal blindness. (Id. at 37.) Indeed, in a questionnaire that Puratos submitted to the Social Security Administration, Puratos responded "NO" to the question of whether Mr. Picton was given "any special considerations, conditions, assistance in performing the job task(s)." (Id. at 15.) Defendant offers no evidence that accommodations provided by Puratos allowed Plaintiff to perform his duties.

### 3. The Administrator Erred by not Considering Plaintiff's Social Security Determination

Plaintiff's contention that the administrator's decision was unreasonable is further strengthened by the administrator's failure to consider Plaintiff's Social Security award. As the Ninth Circuit explained in Salomaa, "Social Security disability awards do not bind plan administrators, but they are evidence of disability." 642 F.3d at 679 (citations omitted). "Evidence of a Social Security award of disability benefits is of sufficient significance that failure to address it offers support that the plan administrator's denial was arbitrary, an abuse of discretion." Id. While ERISA plan administrators, unlike the Social Security Administration, are not bound to defer to the opinions of the claimant's treating physicians, ERISA administrators may not arbitrarily ignore a treating physician's opinion. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003). Here, Plaintiff's Social Security file, which included three medical evaluations and concluded that Mr. Picton was "incapable of performing any past relevant work," was relevant. (Dkt. No. 16 at 16; Dkt. No. 20 at 7.) It was unreasonable for the administrator to not consider this award in its decision. (Dkt. No. 16 at 52-56.)

Plaintiff points to substantial evidence in the record showing that he was disabled under the terms of the plan while he was employed by Puratos. In contrast, Defendant fails to point to any evidence supporting a conclusion that the administrator's decision in this matter was reasonable. Therefore, a grant of summary judgment in favor of Plaintiff is appropriate. Fed. R. Civ. P. 56(e). Because there are no factual issues to determine, there is no need to remand to the insurer for further factual development. The Court therefore DIRECTS an award of benefits beginning on a date six months from June 14, 2010, and continuing through the present.

### E. Attorney's Fees

Pursuant to ERISA § 502(g)(2), the Court authorizes an award of attorney's fees and costs to Plaintiff. ERISA provides that "the court in its discretion may allow a reasonable

attorney's fee and costs of action to either party." Id. The Ninth Circuit has held that "[a]s a general rule, ERISA employee plaintiffs should be entitled to a reasonable attorney's fee if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 589 (9th Cir. 1985). Because Plaintiff prevails in this action, the Court authorize an award of fees and costs, the amount of which will be determined on a later motion.

**Conclusion**

Because there is no genuine issue of material fact regarding whether the administrator's decision in this matter was reasonable, the Court GRANTS Plaintiff's motion for summary judgment and DIRECTS an award of disability benefits beginning on a date six months from June 14, 2010, and continuing through the present. The Court also GRANTS Plaintiff an award of fees and costs to be determined after Plaintiff's counsel submits appropriate documentation. Such documentation shall be filed within 15 days of the entry of this order.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 11th day of September, 2012.

Marsha J. Pechman
United States District Judge